UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x

BRIANNA W.,[1]                          :
                                        :
                    Plaintiff,          :
                                        :
            v.                          :          3:24-CV-762 (SFR)
                                        :
FRANK BISIGNANO,[2] COMMISSIONER OF     :
SOCIAL SECURITY,                        :
                                        :
                    Defendant.          x

---------------------------------------------------------------

**MEMORANDUM & ORDER**

Plaintiff Brianna W. ("Plaintiff") has filed an appeal under 42 U.S.C. §§ 405(g) and

1383(c)(3) against the Commissioner of Social Security ("Commissioner"), seeking to reverse

the decision of the Social Security Administration ("SSA") denying her applications for Title

II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income

("SSI").[3]

---

[1] In opinions issued in cases filed under § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial in order to protect the privacy interests of social security litigants while maintaining public access to judicial records. *See* Standing Order – Social Security Cases, ECF No. 4 (July 2, 2024).

[2] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Under Federal Rule of Civil Procedure 25(d), Frank Bisignano should be substituted for Martin O'Malley as Defendant in this suit. No further action need be taken. 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[3] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. § 405(b)(1). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* C.F.R. §§ 404.929 et seq. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. See 20 C.F.R. §§ 404.967 et seq. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he

Plaintiff has moved the Court for an order reversing the decision of the Commissioner and remanding for further administrative proceedings. Pl.'s Mot., ECF No. 16. The Commissioner in turn filed a Motion to Affirm the Decision of the Commissioner. Mem of L. in Supp. Of Def.'s Mem. to Aff. ("Def.'s Mem."), ECF No. 22. The issue presented is whether the analysis of the Administrative Law Judge ("ALJ") in disagreeing with the conclusions of Plaintiff's treating clinician was adequately explained and supported by substantial evidence. For the reasons set forth below, Plaintiff's motion to reverse and remand is **DENIED**. The Commissioner's motion to affirm is **GRANTED.**

I.    **BACKGROUND**

A.    **Factual Background**

Plaintiff suffers from major depressive disorder and attention deficit hyperactivity disorder ("ADHD"). R. 20. Although she has intermittently worked since she applied for SSDI, the work has not risen to the level of substantial gainful activity. R. 20.

Plaintiff is 30 years old, and as of May 23, 2023, weighed approximately 270 pounds and stood 5 feet, 3 inches tall. R. 20. On November 30, 2020, Plaintiff's treating clinician APRN Lindsie Ryalls noted that in addition to depression and ADHD, Plaintiff suffered from a moderate binge eating disorder. R. 692. Plaintiff took medication but frequently missed doctor's appointments. R. 692. APRN Ryalls noted that Plaintiff had "Poor"[4] ability to carry out "Detailed, but not complex job instructions," ability to maintain personal appearance, and

---

court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

[4] On a scale of "Unknown," "None," "Poor," "Fair," "Good," or "Unlimited." R. 695

reliability. R. 695 Otherwise, APRN Ryalls rated Plaintiff as "Fair" in every category, such as ability to "Follow Work Rules," "Use judgment," and carry out "Complex job instructions." R. 695.

APRN John P. Kemp met with Plaintiff roughly monthly for sessions lasting approximately twenty minutes from December 8, 2020, until March 23, 2023. R. 753, 816, 823. At their first meeting on December 8, 2020, "Client state[d] her depression has been 5/10" and she had "manageable anxiety." R. 752. APRN Kemp's notes state that Plaintiff was "Normal: alert pleasant, cooperative, engaged Speech is logical, non-pressured, normal rate and rhythm." R. 752. She was further "oriented to person, place, time, and situation." R. 752. The established problems of depression and ADHD were "stable or improved." R. 752. On January 6, 2021, Plaintiff reported things were "going good." R. 753. She reported a generally good mood "(about 2/10 depression without anxiety)." R. 753. APRN Kemp reported: "Normal: alert, pleasant, cooperative, engaged;" "Recent and remote memory are grossly intact;" "Attention is impaired, patient tracks with effort, requires direction/structure;" and "General intelligence appears average." R. 753.

The notes from that initial meeting track closely to the types of observations APRN Kemp made for the next two years. On February 3, 2021, Plaintiff reported "I'm good." R. 754. Her attention remained unchanged, described as "impaired, patient tracks with effort, requires medication/structure." R. 754. Again, APRN Kemp described Plaintiff as "Normal: alert, pleasant, cooperative, engaged." R. 754. On March 3, 2021, Plaintiff reported "overall good mood, but states she has been stressed out." R. 755. She also reported "good focus with current Vyvanse dose." R. 755.

On March 31, 2023, Plaintiff reported, "I'm doing pretty well." R. 791. She reiterated she has "good focus with Vyvanse dose and denies depression." R. 791. APRN Kemp maintained his assessment of Plaintiff's attention abilities: "Attention is impaired, patient tracks with effort, required redirection/structure." R. 791. He also rated Plaintiff's judgment as "fair" and her thought process as "linear and goal-directed," while "loosening of associations is not present." R. 791. He also reported that her "general intelligence appears average." R. 791. On May 26, 2021, Plaintiff said "I'm doing ok." R. 793. Plaintiff further expressed that her depression was continuing to be managed by her medication." R. 793. Plaintiff asked for an increase in her Vyvanse dose but was reminded by APRN Kemp that "she is at the maximum dose and would probably be more aware that her medication was working if she had tasks/work to focus on." R. 793. Again, her thought process was linear, her speech logical, and her awareness remained unchanged from previous visits. R. 793. APRN Kemp reiterated the same assessment of her attention, "impaired, patient tracks with effort, requires redirection/medication." R. 793.

On December 15, 2021, Plaintiff was assessed by Rachael Holland in an individual psychotherapy appointment. R. 801. Plaintiff reported "worsening of depression, low self-esteem." R. 801. She also reported "she sees John Kemp at RHOS for medication management, but feels the medication is not helping." R. 801. Ms. Holland reported that Plaintiff was "oriented", "cooperative, pleasant, and engaged, and her "[s]peech was normal," though her "affect was flat and sad with slowed thoughts, laden with depressive cognitions." R. 801. Plaintiff presented "as below average intellect with fair insight and judgment." R. 801.

On December 27, 2021, Plaintiff met again with APRN Kemp and she reported that her mood was "good/stable most days but that having her son home from school on vacation is

4

stressful at times." R. 802. She reported that "her focus is improved with current stimulant level." R. 802. Kemp reiterated his pervious assessments of her attention and mental focus. R. 802. On March 16, 2022, she had another appointment with Ms. Holland who again reported that Plaintiff "presented as lethargic, with flat affect, delayed responses and slow speech." R. 806.

On June 6, 2022, Plaintiff described her situation to APRN Kemp as "pretty good," and reported "good focus on current stimulant dose." R. 809. She added that "she has run out of medications and states that her focus has been off." R. 809. APRN Kemp observed that Plaintiff's "thought process is linear and goal-oriented," her "recent and remote memory are grossly intact," "affect is full range and appropriate to content," and "attention is grossly intact, patient tracks well." R. 809. Plaintiff continued to see APRN Kemp throughout 2022 and into 2023, and at each visit, Kemp noted that "attention is impaired, patient tracks with effort, required redirection/structure." R. 810, 811, 813, 814. On January 5, 2023, Plaintiff reported "I'm []doing ok." R. 814. APRN Kemp reported that Plaintiff's appearance was "Normal: alert, pleasant, cooperative, engaged, obese weight, fair hygiene and grooming." She was oriented, speech was local, judgment was fair, and "thought process was linear and goal-directed." R. 814.

On February 7, 2023, APRN Kemp completed a medical source statement about Plaintiff. R. 816. APRN Kemp noted that Plaintiff was "prescribed medications" "with good response, client reports stable mood + adequate focus." R. 816. In the statement, APRN Kemp noted Plaintiff's symptoms included depressed mood, difficulty concentrating or thinking, and significant difficulties learning and using academic skills. R. 817. He also recorded that Plaintiff had Low IQ and limited ability to reason. R. 818. APRN Kemp also noted that

5

Plaintiff "relies on ongoing medical treatment, mental health therapy, psychosocial support, or a highly-structured setting to diminish the symptoms and signs of his or her mental disorder." R. 819.

Plaintiff's final meeting with APRN Kemp that is documented in the record was on April 13, 2023. Plaintiff reported "I've been ok." R. 824. She reported that her mood has been "stressed, but ok." R. 824. APRN Kemp recorded that "Client states she has been taking her medication daily, and it is working for her." R. 824. He reiterated the same observations on her attention, appearance, speech, thought process, awareness, and memory as he had noted during previous visits. R. 824.

### B.    Procedural History

On October 19, 2020, Plaintiff filed applications for Title II Social Security Disability Insurance and Title XVI Supplemental Security Income. R. 18. In both applications, Plaintiff alleged disability beginning April 15, 2020. R. 18. The Claim was denied initially on December 22, 2020, and upon reconsideration on March 31, 2021. R. 18. Plaintiff then filed a written request for a hearing on May 31, 2021. R. 18. The hearing, with the consent of the Plaintiff and due to the Covid-19 Pandemic, was held by telephone on May 23, 2023. R. 18.

The ALJ issued an unfavorable opinion on July 3, 2023. R. 27. On March 11, 2024, the Appeals Council denied review of the ALJ's decision. R. 5. Plaintiff then filed suit in this court on April 24, 2024. ECF No. 1. On August 26, 2024, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. ECF No. 16. On November 25, 2024, the Commissioner filed a Motion to Affirm the Decision of the Commissioner. ECF No. 22.

## II.      APPLICABLE LEGAL PRINCIPLES

### A.      Eligibility for SSI Benefits

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.

First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b).

If the claimant is not engaged in such activity, the ALJ must proceed to Step Two to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 404.1520(c). An impairment will be considered severe if it significantly limits a claimant's ability to perform "basic work activities." *Id.*

If the claimant has a medically determinable severe impairment, the ALJ proceeds to Step Three to determine whether any identified severe impairment meets or medically equals those identified in Appendix 1. *Id.* § 404.1520(d). These impairments are per se disabling, assuming a claimant meets the duration requirement. *Id.*

If the claimant's impairments are not per se disabling, then the ALJ proceeds to Step Four, which entails assessing the claimant's residual functional capacity, or their ability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1).

At Step Five, the ALJ must determine whether the claimant's residual functional capacity will allow the performance of any past relevant work. If the claimant is unable to

perform past relevant work, the agency bears the burden of proving that, accounting for the claimant's age, education, work experience, and residual functional capacity, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(g)(1). If the ALJ proves all of that, then the claimant is not disabled. *Id.*

The claimant bears the burden of proving the requirements of Steps One through Four, after which the burden shifts to the Agency to prove that the claimant is capable of working. *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act. However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform.") (citations omitted).

**B.      Standard of Review**

Under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), a district court reviewing a final decision of the Commissioner of Social Security "is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). A district court reviewing a disability determination "must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)).

The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Hum. Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his/her conclusion, and whether the decision is

supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). "Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran*, 569 F.3d at 112. It is a "very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448). To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).

When "the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained." *Kumar v. Berryhill*, No. 3:16-cv-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). On the other hand, "[a]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). A court generally need not remand a case if the ALJ only committed harmless error, such that "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### III.    DISCUSSION

Plaintiff challenges the ALJ's evaluation of APRN Kemp's medical opinion as "not persuasive." Pl.'s Mot. 6 (citing R. 25). Plaintiff argues that the ALJ did (A) not properly explain how APRN Kemp's medical opinion was not consistent with the medical evidence, and (B) that the ALJ's conclusion was not supported by substantial evidence. Pl.'s Mot. 6. The Commissioner argues that the ALJ reasonably evaluated APRN Kemp's medical opinion and substantial evidence supports the ALJ's conclusion that Kemp's opinion was neither supported by APRN Kemp's own findings nor consistent with other evidence of the record. Def.'s Mem. 4.

A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions," including, in relevant part, a plaintiff's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2)(i).

Section 404.1520c of Title 20 of the Code of Federal Regulations sets forth the parameters an ALJ must follow when evaluating the persuasiveness of a medical opinion or prior administrative medical finding. The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the medical opinions by applying the five factors listed in 20 C.F.R. §§ 404.1520c(c)(1)-(c)(5). These factors are: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other factors.

The ALJ must "articulate how [they] considered the medical opinions and how persuasive [they] [find] the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021). The ALJ is not required to specifically discuss each of the factors, but they must expressly consider "the supportability" and "consistency" factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[S]upportability . . . and consistency . . . are the most important factors . . . [and] [t]herefore, [the ALJ] will explain how [they] considered the supportability and consistency factors for a medical source's medical opinionres . . . in [their] determination . . . ."); *see also Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[I]n cases where the new regulations apply, an ALJ must explain [their] approach with respect to the first two factors when considering a medical opinion . . . ."), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

The ALJ must explain how the "supportability" and "consistency" factors were applied and provide a narrative that permits review by building a discernible logical bridge between the evidence and the functional conclusions. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (requiring the ALJ to explain consideration of supportability and consistency); Titles II & XVI Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996), 1996 WL 374184, at *7 (July 2, 1996) (explaining that RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical . . . and nonmedical evidence"); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1–2 (2d Cir. June 17, 2022) (summary order) (remanding where an ALJ failed to explain supportability and consistency and discussing that error is subject to harmless-error review but was not harmless there); *Vellone*, 2021 WL 319354, at *6 (stating that under new regulations, ALJ

11

must articulate supportability and consistency); *Jacqueline L.*, 515 F. Supp at 7-8 (noting that under new regulations, ALJ must articulate supportability and consistency).

For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). For the consistency analysis, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Thus, I must determine (A) whether the ALJ properly articulated why he found APRN Kemp's opinion unpersuasive and (B) whether ALJ's opinion was supported by substantial evidence.

### A.    Sufficient Explanation

In this case, the ALJ reviewed the medical opinion of APRN Kemp and found it "not persuasive" because the ALJ did not find the opinion supported by APRN Kemp's own treatment documentation. Plaintiff argues that the ALJ only "facially engaged in an analysis of supportability and consistency." Pl.'s Mot. 8. The ALJ, however, offered three distinct reasons why APRN's treatment notes did not support the conclusion that Plaintiff had a marked inability to function in a work environment. First, the ALJ found that APRN Kemp's notes showed "generally benign findings, including pleasant, cooperative and engaged behavior, normal speech, fair insight and judgment, linear thought process, intact memory, and impaired attention, but average intelligence." R. 25. Second, the ALJ highlighted that "claimant's own reports that her mood is stable and her attention/focus is improved with medication." R. 25. Third, the ALJ based his opinion on the "conservative treatment during the period at issue,

consisting of medication management and psychotherapy, with stable medication type and dosage." R. 25.

In addition to those direct rebuttals of APRN Kemp's findings about Plaintiff's ability to work in Step Four of his analysis, the ALJ also made a further inquiry into the severity of Plaintiff's limitations in Step 3. There, the ALJ found Plaintiff only had a "moderate limitation" in (1) interacting with others, (2) with regard to concentrating, persisting or maintaining pace, and (3) adapting or managing herself. R. 21. For all three of these Step Three conclusions, the ALJ offered further support, and direct citations to the relevant portions of the record, particularly to the treatment notes of ALJ Kemp. *See, e.g.*, R. 21 ("There is no evidence in treatment documentation of issues completing activities of daily living. Mental status examinations throughout treatment have revealed generally benign findings, including pleasant, cooperative and engaged behavior, normal speech, fair insight and judgment, linear thoughts process, intact memory, and average intelligence, but impaired attention. She reported difficulty managing stress (6F [R. 748-781], 7F [R. 782-815], 9F [R. 820-826))."

The ALJ's explanation of his analysis, and the citations to the APRN's treatment notes, suffice to articulate why the ALJ did not find APRN Kemp's opinion persuasive. *See Cheryl W. v. Kijakazi*, No. 3:22-CV-1476 (VAB), 2024 WL 1012923, at *4 (D. Conn. Mar. 8, 2024) ("ALJ Borré explained that he did not find Dr. Carbonari's April 2021 opinion persuasive because the record—specifically, notes from Cheryl W.'s treating therapist documenting generally normal mental status findings—did not show a significant decline in cognitive functioning, as Dr. Carbonari opined . . . This explanation shows that the ALJ considered whether Dr. Carbonari's opinion was supported by and consistent with the record. Accordingly, the ALJ provided a sufficient explanation for how he weighed this evidence in

13

the opinion.") (citations omitted). The ALJ explained his decision sufficiently to permit meaningful judicial review. Notwithstanding Plaintiff's claims the ALJ engaged in only a superficial review, the ALJ's opinion permits me to track in the record the evidence that supported his conclusion and understand the reasons he found APRN Kemp's opinion unpersuasive. Therefore, I do not find the ALJ committed legal error in his articulation of the reasons he did not adopt APRN Kemp's findings.

### B.    Substantial Evidence

Plaintiff also argues that the ALJ's finding that Plaintiff did not have marked limitations in her ability to work is not supported by substantial evidence. Pl.'s Mot. 13. The Commissioner points to the numerous portions of the record that corroborate the findings of the ALJ. Def.'s Mem. 5. Given the deferential standard of review, I find that substantial evidence in the record supports the conclusions of the ALJ.

"Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran*, 569 F.3d at 112. It is a "very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448.

Plaintiff disagrees that the medical record shows benign findings. Pl.'s Mot. 11. Yet as the Commissioner points out, APRN Kemp's medical notes consistently report Plaintiff's mood was stable with adequate focus. Def.'s Mem. 6. For example, on January 6, 2021, Plaintiff reported things were "going good," and she had a generally good mood "(about 2/10 depression without anxiety)." R. 753. More often than not, she would say "things are going good," or statements to a similar effect. R. 785. Almost invariably, APRN Kemp described

14

Plaintiff's thought process as "linear and goal-directed," and she always remained oriented to time and place. R. 784. Plaintiff almost always presented as alert, pleasant, and cooperative, with normal and logical speech. *See* R. 752, 753, 754, 755, 784, 785, 787, 789, 791, 792, 793, 794, 795, 796, 797, 799, 800, 802, 804, 809, 810, 811, 813, 814, 822, 824. Other times, as the ALJ acknowledged, Plaintiff had difficulty managing stress, R. 21, and her depression sometimes was rated as a 5/10, R. 784. But overall, more than a mere scintilla of evidence supports the ALJ's conclusion that Plaintiff's depression did not render her unfit for the daily activities of life and work.

Plaintiff argues that there is no substantial evidence to rebut APRN Kemp's conclusions that Plaintiff had a moderate limitation in concentration and processing information. Plaintiff cites the fact that nearly every time APRN Kemp met with Plaintiff he noted her impaired attention. Pl.'s Mot. 11. Although true, APRN Kemp's notes almost always noted that that Plaintiff's attention was "impaired, patient tracks with effort, requires medication/structure." R. 753. Although Patient suffered from impaired attention, APRN Kemp noted this impairment could be addressed by medication.

In his Medical Source Statement, APRN Kemp stated that Plaintiff was "prescribed medications . . . with good response, client reports stable mood + adequate focus." R. 816. The ALJ relied upon statements such as this, and Plaintiff repeated assertions that her Vyvanse gave her good focus, to conclude that Plaintiff's "attention/focus is improved with medication." R. 25. Numerous different points in the medical record demonstrate that although Plaintiff suffered from ADHD, her regularly prescribed medication could, and did, improve her attention issues. Therefore, I cannot conclude that the ALJ's determination that Plaintiff could adequately focus was not supported by substantial evidence. Nor has the ALJ "cherry-

picked" the data and ignored APRN Kemp's findings as the Plaintiff asserts. Pl.'s Mem. 14. The ALJ used APRN Kemp's own medical observations, and the conclusions from his Medical Source Statement, to find APRN Kemp's opinion unpersuasive.

Plaintiff also argues that although the ALJ put faith in the success of the treatment plan, Plaintiff did not show any real improvement. Pl.'s Mot. 13. In support of this assertion, Plaintiff cites the fact that she had "to move living situations multiple times, was married then immediately annulled her marriage and faced a child-service case regarding her son." *Id.* In addition, "[s]he interviewed for multiple jobs but could not obtain employment." *Id.* While those factors undoubtedly placed a great strain on Plaintiff's personal life, they do not, in and of themselves, show marked limitations on her ability to work. In order to prevail, the Plaintiff must show she could not work by reasons of a "medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). At step four, a plaintiff bears the burden of proof to show their inability to work in light of their limitations. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 404.1545(a)(1). Although I recognize the serious impact of marriage and child custody issues, those matters do not in and of themselves qualify as medically determinable impairments. Nor has Plaintiff met her burden of proof, by evidence in the record, that these life challenges render her medically unable to work. I have concluded that substantial evidence supports the ALJ's determination that Plaintiff retains an ability to work in the future.

Because I find that substantial evidence supports the ALJ's decision, it must be upheld. *See Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008); *see also Traci R. o/b/o E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-cv-607 (DNH) (TWD), 2022 WL 4354367, at *6 (N.D.N.Y. Sept. 20, 2022), *report and recommendation adopted sub nom. Traci May R. on behalf of E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-cv-607, 2022 WL 12318225 (N.D.N.Y.

Oct. 20, 2022) (stating that "[u]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[,]" as "substantial evidence means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted).

## IV.     **CONCLUSION**

For the reasons explained above, Plaintiff's motion to remand is **DENIED**. The Commissioner's motion to affirm is **GRANTED**. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

New Haven, Connecticut
March 31, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

17
